UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.    *1:19-mJ-03391-Becerra*

UNITED STATES OF AMERICA

vs.                                                        FILED UNDER SEAL

HANSON RICHARD LARKIN,

Defendant.

_____/

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?      ___Yes _X__No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? ___Yes _X__No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: _____

Maria K. Medetis
Assistant United States Attorney
Fla. Bar No. 1012329
99 NE 4th Street, 8th Floor
Miami, Florida 33132
Tel: (305) 961-9010
Maria.Medetis@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  1 ! 19-mJ- 03 391 - Becerra |
| HANSON RICHARD LARKIN, | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____08/25/2019_____ in the county of _____Miami-Dade_____ in the

___Southern___ District of _____Florida_____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 875(c) | Interstate Transmission of Threatening Communications. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

_____Special Agent Andrew C. Mercurio, FBI_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **8·28·19**
_____

_____
*Judge's signature*

City and state: _____Miami, Florida_____

Hon. Jacqueline Becerra, U.S. Magistrate Judge
*Printed name and title*

## SEALED AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Andrew C. Mercurio, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since 2016. I have received intensive training at the FBI Academy in Quantico, Virginia, focused on both criminal and national security investigations. I am currently assigned to the Miami-Dade County Public Corruption Task Force in the Miami Division, where I have participated in investigations involving the corruption of elected officials and law enforcement officers, civil rights investigations under the color of law, hate crimes and other violations of Federal law. I am a Law Enforcement Officer of the United States, and I am empowered to conduct investigations, execute warrants, and make arrests for offenses against the United States enumerated in, but not limited to, Title 18 of the United States Code.

2.    This affidavit is submitted in support of a criminal complaint charging Hanson Richard LARKIN (hereinafter "LARKIN") with Interstate Transmission of Threatening Communications, in violation of Title 18, United States Code, Section 875(c), on or about August 25, 2019.

3.    I base the facts in this affidavit upon my personal knowledge, as well as knowledge, information, and documentation that I obtained from other law enforcement officers and other witnesses while in my official capacity. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support this criminal complaint, it does not contain all of the information known to me concerning this investigation; it contains only those facts I believe necessary to establish probable cause for the arrest.

## PROBABLE CAUSE

4.      On or about August 26, 2019, the FBI received information from the West Miami Police Department that an individual, hereinafter referred to by his/her initials, "L.R.", had information pertaining to threatening communications made against the Jewish community. L.R. stated that LARKIN had communicated threats to commit a shooting and kill Jews at a Florida synagogue. Said threats were sent via text message from telephone number (412) 228-7806.

5.      L.R. expressed that the threats were communicated by LARKIN as an ultimatum in an attempt to coerce L.R. into meeting with him in Miami. Over the course of the several weeks leading up to the threatening communications, LARKIN repeatedly expressed via text message his intent to travel to Miami, Florida to meet with L.R.

6.      On or about August 2, 2019, LARKIN sent a text message to L.R. stating, "did you find out about the tenth." On or about August 6, 2019, LARKIN texted L.R., that he was going to break into his/her house and disfigure L.R.'s Barbie dolls. LARKIN went on to express his desire to meet with L.R. in Miami. L.R. subsequently advised LARKIN that doing so would not be a good idea, further stating, "I do not feel right about it, and as your friend, am asking you to respect my wishes, please?"

7.      On or about August 25, 2019, LARKIN texted L.R. his/her address, stating, "eh? I'm coming right now." When L.R. responded that he/she was calling the police, LARKIN texted, "Come say hi for five seconds then I'll leave…I'm right outside your door…In knocking now."

8.      L.R. provided your affiant with screenshots of the subsequent communications, which included the following messages, all from the same telephone number described above:

      a.  "…I bought a gun with my first paycheck If I don't meet you I will be forced to use it."

2

    b.  "I told you how much I hate Jews right?"

    c.  "If meeting me for five seconds is not worth the lives of multiple Jews than I have no other option."

    d.  "There's a Chabad near me. And Amtrak has no security for weapon. Don't make me make a choice theyll regret."

    e.  "Ok so then we meet and no dead Jews?"

    f.  "…I want to smell your fear."

9.    Notably, the investigation identified a Jewish house of worship located approximately 2.5 miles from LARKIN's residence in DeLand, Florida.  The investigation further identified multiple Jewish houses of worship throughout Miami-Dade County, including one approximately 8 miles from L.R.'s residence.

10.    L.R. further informed the FBI that LARKIN had previously expressed a hatred for Jews during conversations, and that LARKIN had also repeatedly discussed the desire to end his own life.  A review of the text messages exchanged between L.R. and LARKIN identified statements made by LARKIN indicative of threats to commit self-harm.  Said text communications also included a photograph sent by LARKIN, which appears to depict the same person as that shown in the photograph of LARKIN on record in the Florida Driver and Vehicle Database, hereinafter, "DAVID."

11.    The investigation identified that LARKIN resided in DeLand, Florida, and had traveled to and from Miami, Florida via Amtrak train.  Amtrak Police Department records demonstrated that LARKIN had traveled from DeLand to Miami via Amtrak train on August 24, 2019.  LARKIN returned to DeLand via Amtrak train on August 26, 2019.  LARKIN boarded a 3:02 p.m. train in Delray Beach that had originated in Miami, and arrived in DeLand at

approximately 10:31 p.m. LARKIN's return trip itinerary listed the ticket holder's telephone number as (412) 228-7806, the same number from which the threatening texts to L.R. were sent, and the email address as "HANSONLARKIN@GMAIL.COM." Additional information provided by Amtrak Police Department identified the address utilized by LARKIN to purchase the return train ticket as the same address listed for LARKIN in DAVID.

12. The investigation further identified Verizon Wireless as the service provider for telephone number (412) 228-7806. On August 27, 2019, law enforcement submitted an emergency request for records from Verizon Wireless for this telephone number, pursuant to Title 18, United States Code, Section 2702(b)(8). A review of associated records provided by Verizon Wireless for said telephone number identified the listed subscriber as someone believed to be LARKIN's mother. However, L.R. advised that he has been speaking to LARKIN over this telephone number for approximately two years.

13. Verizon Wireless reports further indicated that text messages were sent on August 25, 2019 by (412) 228-7806 to the number maintained by L.R. These text message communications containing the threats to injure and kill Jews, as well as other text messages sent by LARKIN to L.R. on that same date, were processed by switches "Southfield_SF04SL" and "Westland_SF08SL," before being routed to L.R.'s telephone. Verizon Wireless subsequently confirmed that both aforementioned switches are maintained in the state of Michigan, and thus these communications travelled across state lines and were communications made in interstate commerce.

14. On August 27, 2019, law enforcement approached LARKIN at his place of employment in DeLand, Florida. LARKIN started to walk away from law enforcement. Law enforcement ordered LARKIN to stop. LARKIN hesitated, and was placed in handcuffs.

4

LARKIN became agitated and screamed out several times that he wanted to be killed. Pursuant to the Baker Act, *see* Fla. Stat. Ann. 394.451, *et seq.*, law enforcement took LARKIN into custody. LARKIN was given his *Miranda* warnings by law enforcement. LARKIN was asked if he understood his rights, and nodded in acknowledgment. However, the follow up question, "knowing these rights, do you want to speak to me?" was not asked of LARKIN. LARKIN began to answer questions and then indicated that he didn't want to talk to about anything and stated "you said I don't have to talk to you." Law enforcement continued questioning LARKIN and LARKIN said, in sum and substance: LARKIN admitted that he traveled to Miami via train to meet a friend; LARKIN identified the friend as L.R.; LARKIN admitted that he sent threatening communications to L.R. in order to get L.R. to meet LARKIN in person; LARKIN explained that if he did something stupid then L.R. would visit LARKIN in jail; LARKIN expressed his dislike for Jewish people, saying that they were the "most protected class in America"; LARKIN said that sending "terroristic threats" would cause him to go to jail; LARKIN denied owning a firearm; and LARKIN stated that he never intended to hurt anyone.

*[This space intentionally left blank.]*

## CONCLUSION

15.     Based on my training and experience, and as further supported by the facts in this affidavit, I respectfully submit that there is probable cause to believe that on August 25, 2019, Hanson Richard LARKIN did knowingly transmit in interstate commerce communications threatening to injure the person of another, in violation of Title 18, United States Code, Section 875(c).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Andrew C. Mercurio, Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me
this 28 day of August 2019.

JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA