UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-20702-Cr-MARTINEZ/OTAZO-REYES

UNITED STATES OF AMERICA

v.

HANSON RICHARD LARKIN

        Defendant.

_____/

**GOVERNMENT RESPONSE TO DEFENDANT'S REQUEST FOR VARIANCE FROM ADVISORY SENTENCING GUIDELINES**

COMES NOW the United States, by and through the undersigned Assistant United States Attorneys, and files this Response to defendant Hanson Richard Larkin's Sentencing Memorandum and Request for Variance from Advisory Sentencing Guidelines (DE: 21, referred to herein as "Request"), stating as follows:

**Factual Background and Procedural History**

Based on the text messages threatening to kill Jews that he sent while in the Southern District of Florida on August 25, 2019, Hanson Richard Larkin ("Larkin") was charged by Criminal Complaint with violating 18 U.S.C. §875(c) (DE: 3). Larkin had returned to his home in Deland, Florida, on August 26, 2019, and he was involuntarily committed under the Baker Act later that day by local law enforcement.

He was arrested on the Criminal Complaint in the Middle District of Florida on September 6, 2019, and at his initial appearance in Orlando, he waived his right to both a preliminary hearing and an identity hearing, and agreed to removal to this district. A pretrial detention hearing was held in Orlando on September 10, 2019, and Larkin was

1

ordered detained pending trial as a danger to the community. Larkin made his initial appearance in the Southern District of Florida on October 8, 2019.

Larkin eventually waived indictment, and on November 6, 2019, pursuant to a Plea Agreement (DE: 17), Larkin pled guilty to a one-count Information charging him with knowingly and intentionally transmitting a threatening communication in interstate commerce, in violation of 18 U.S.C. §875(c). The government and Larkin agreed to jointly make two recommendations regarding the advisory Sentencing Guidelines: first, that Larkin's base offense level should be 12, pursuant to USSG §2A6.1(a)(1); and second, that he should receive the 3-level enhancement under USSG §3A1.1 because he intentionally selected the object of his threats based on their religion (DE: 17 at ¶6). The parties are otherwise free to advocate regarding the applicable advisory Guidelines and the ultimate sentence to be imposed (DE: 17 at ¶6).

**The Advisory Sentencing Guidelines Range**

Under the current post-*Booker* sentencing regime, this Court is required to first compute an advisory Guidelines range, before it applies the 18 U.S.C. §3553(a) factors to determine the defendant's ultimate sentence. *See United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). The Pre-Sentence Investigation Report ("PSR") computed the Total Offense Level (after recommending the two-level reduction for acceptance of responsibility) to be level 13 (PSR at ¶26), and stated that Larkin should be in Criminal History Category I (PSR at ¶29), leading to an advisory Guidelines Zone C sentencing range of 12-18 months (PSR at ¶62). The government agrees with this conclusion, and requests that the Court find Larkin's advisory Guidelines range to be 12-18 months imprisonment.

**The §3553(a) Factors and Defendant's Request for a Downward Variance**

Once the Court has determined the advisory Guidelines sentencing range as a starting point, it must then consider the §3553(a) factors in determining and imposing a reasonable sentence. Although the Court may not simply presume that a sentence within the advisory Guidelines range is reasonable, the Supreme Court has recently reaffirmed that fact that "the Guidelines are to be the sentencing court's 'starting point and . . . initial benchmark.'" *Molina-Martinez v. United States*, 136 S.Ct. 1338, 1345 (2016) (citation omitted). In *Molina-Martinez*, the Supreme Court also stated that sentencing courts "'*must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process'" and that "The Guidelines are 'the framework for sentencing' and 'anchor . . . the district court's discretion.'" 136 S.Ct. at 1345 (citations omitted; emphasis in original).

Pursuant to §3553(a), the relevant factors to be considered in imposing a sentence are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, (B) afford adequate deterrence to criminal conduct, (C) protect the public from further crimes by the defendant, and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the types of sentences available; (4, 5) the advisory Guidelines sentencing range and any relevant policy statements; (6) the need to avoid unwarranted sentencing disparity; and (7) the need to provide restitution.

On December 27, 2019, Larkin filed his Request asking this Court to vary downward from the advisory Sentencing Guidelines range to impose a sentence that

would immediately release him from custody onto a period of supervised release that would include residing with his mother in Deland, Florida, and participating in mandatory psychological and psychiatric counseling and treatment (Request at 14-15). His request is based primarily on §3553(a)(1), the nature and circumstances of the offense and the history and characteristics of his client, as it portrays Larkin as a mentally troubled but essentially harmless individual. In making this argument, Larkin claims that his threats to kill Jews were never meant to be acted on, but rather were a desperate effort to get L.R. to meet with him without an appreciation of the consequences and seriousness of those actions because of all the mental health issues afflicting him.

### Section 3553(a)(1) – The Nature of Defendant's Offense

The first part of §3553(a)(1) focuses on the nature and circumstances of the offense, while the second looks at the history and characteristics of the defendant. As set out in the Criminal Complaint (DE: 3), Information (DE: 9), Stipulated Factual Basis (DE: 16), and PSR (DE: 23), the offense in this case was a series of text messages sent by the defendant to his online friend, L.R., threating to use the gun he said he had recently purchased to kill a number of Jews unless L.R. would meet with him in person. Larkin sent these text messages after he had travelled to the Southern District of Florida, and Larkin sent them to force L.R. to meet with him, despite L.R.'s repeated requests that Larkin not come down to South Florida and his refusals to meet with Larkin.

Regardless of the defendant's underlying motivation, his criminal conduct was an extremely serious offense. Looked at in the context of the epidemic of increasingly frequent and violent anti-Semitic incidents that is plaguing this country, it is hard to

4

overstate the seriousness of the defendant's decision to try to force L.R. to meet by sending messages threatening to use his gun to kill multiple Jews.[1] L.R. took these threats seriously, informing the police, and the local authorities then contacted the Federal Bureau of Investigation ("FBI").

The FBI handled the investigation of this incident on an emergency basis, assuming that the Jewish communities in both South Florida and the Deland, Florida area could be in danger. Fortunately, Larkin did not carry out his threatened attack, and his Lyft travel records do not show Larkin making any trips to local synagogues, although there was one unexplained trip to Sunny Isles Beach. However, this information was not available to law enforcement in real time, and Larkin was considered a serious danger until he was located at his place of employment and taken into custody by local authorities under the Baker Act.

Moreover, contrary to the defendant's claim that the threats were "veiled" and "never forthright" (Request at 6), the text messages themselves are unambiguous in their wording. These messages essentially state that Larkin was going to shoot and kill multiple Jews unless L.R. met with him. Whatever the true motivation and intent was that was behind Larkin's threats, the threats themselves were direct and extremely menacing, and were threatening conduct in line with the other violent anti-Semitic incidents plaguing this country in the recent past. It is fortunate that Larkin does not

---

[1] This epidemic of anti-Semitic violence has included the 2018 mass killing at the Tree of Life synagogue in Pittsburgh, the April 2019 shooting at the Chabad of Poway in the San Diego, California area, the July 2019 shooting of a man walking towards a northeast Miami-Dade synagogue, as well as an almost daily stream of anti-Semitic incidents, most recently the late December Hanukkah stabbing attack at the home of a rabbi in Monsey, New York.

appear to have had the actual intent or means to carry out the threat, but it does not change the words used or the impact they caused, nor does it excuse that conduct.[2]

### Section 3553(a)(1) – The Defendant's History and Characteristics

The defendant focuses the bulk of his variance argument on the second facet of §3553(a)(1), detailing Larkin's wide array of mental health and social adjustment issues, and attempting to explain and minimize the nature of his hatred of Jews. The government has reviewed the voluminous mental health treatment records provided by the defendant, and it is clear that Larkin does have a number of psychological and mental health issues. However, these conditions do not excuse Larkin's criminal conduct, nor do they exempt him from a sentence that will serve the dual purpose of protecting the public while also providing him with needed mental health treatment. That sentence should include a period of incarceration at the low end of the advisory Guidelines range, with the Bureau of Prisons providing mental health treatment during Larkin's time in custody, followed by supervised release with a special condition of mandatory mental health treatment.

Larkin's long-standing and deep-rooted hatred for Jews cannot be denied or minimized, and that hatred that continues to this day as reflected in comments he made to the law enforcement officers who took him into custody under the Baker Act on August 26, 2019. The August 25, 2019, text message threats to kill Jews that are the crime in

---

[2] At page 6 of the Request, the defendant claims that research of unspecified "data producing agencies revealed that [the defendant] never purchased a firearm." While it is true that a security sweep of Larkin's residence revealed only a pistol-style pellet gun, it also is true, as explained in the Addendum to the final PSR, that there is no central registry or database that law enforcement can check to determine if the defendant actually purchased a firearm (DE: 23-1).

6

this case were not a random and aberrant statement of hatred.  To the contrary, they were just the latest expression of a hatred of Jews that the defendant claims started with bullying by a Jewish schoolmate and mistreatment by a Jewish psychiatrist (Request at 4-5).  This hatred that has persisted despite years of treatment and his apparently acceptable interactions with Jewish members of his family (Request at 5).

In addition, the mental health records provided by the defendant seem to show a difficult and sometimes volatile relationship between Larkin and his mother.  This strained relationship casts doubt on the feasibility of the defendant's suggested sentence, since under his proposal, Larkin would be residing with his mother and there would be a significant period of time (between thirty and sixty days) that the defendant would not be receiving intense facility-based mental health treatment (Request at 9-10, 14-15).  It is the government's position that this combination of risk factors makes the recommended period of incarceration both reasonable and necessary.  The defendant's history is without question a sad one, but it is not one where a downward variance is appropriate.

### Section 3553(a)(2)

As explained above addressing §3553(a)(1), the offense in this case was a serious crime: threatening to kill Jews unless L.R. met Larkin's demands for a meeting.  Not only was L.R. scared by these texts, but law enforcement throughout Florida was put into emergency mode to find Larkin and neutralize what had to be taken as a serious threat.

Along with considering the seriousness of the offense and providing just punishment, §3553(a)(2) also focuses on the need for the sentence to promote respect for the law and "afford adequate deterrence" to criminal conduct.  Regardless of either

7

the ultimate motivation or any hidden intention not to carry out the threat, the defendant's conduct must receive a sentence that makes it clear to all that in this time of almost daily anti-Semitic attacks, even mere threats will be punished.

Finally, §3553(a)(2)(D) states that the sentence also must provide the defendant with needed medical care in the most effective manner. Without question, the defendant needs significant psychiatric and psychological care. However, while the government and defendant agree on this need, it is the government's position that the most effective manner to provide this care is for the defendant to receive a sentence that includes incarceration with care provided by the Bureau of Prisons. During this time of incarceration, the defendant and the Probation Office should be able to put in place a meaningful care plan that would then be included as a mandatory special condition to the supervised release term that should follow his release from incarceration.

**Section 3553(a)(4), (a)(5)**

These subsections of §3553(a) require consideration of the advisory Guidelines sentencing range and any relevant policy statements in determining the final sentence. They have special relevance here, where the defendant, within his variance request, also alludes to possible grounds for a downward departure under the Guidelines such as §5K2.13 (Reduced Mental Capacity) and §5K2.20 (Aberrant Behavior) (Request at 11-12). The defendant's conduct shows that neither of these provisions apply.

Regarding §5K2.20, his threats against Jews were not a one-time aberrant occurrence, but rather were just another expression of his long-standing hatred for Jews. As for §5K2.13, his mental condition did not substantially contribute to his commission of

8

the offense. Rather, he committed the offense with the clear and calculated purpose of forcing L.R. to meet with him, regardless of the consequences.

Moreover, to the extent that the defendant argues that the advisory Guidelines overstate the seriousness of his criminal conduct because Larkin never intended to carry out his threats and went home after being rebuffed by L.R., that already has been taken into account by the fact that the advisory Guidelines do not include the 6-level enhancement under §2A6.1(b)(1) for conduct evincing an intent to carry out the threats that constitute the offense. The crime in this case was sending the threatening text messages, not taking action to follow through, and the advisory Guidelines in this case fairly and appropriately reflect the seriousness of that crime.

**Conclusion**

After consideration of all the relevant advisory Guidelines and statutory factors, it is the government's position that the reasonable and necessary sentence to provide just punishment, protect the public, and provide the defendant with needed mental heal care, is a period of incarceration at the low end of the 12-18 month advisory Guidelines range, followed by three years of supervised release with a special condition of mandatory mental health treatment. This sentence of 12 months incarceration is appropriate not only based on the underlying facts and circumstances described in the Criminal Complaint and Affidavit (DE: 3), the Information (DE: 9), the Stipulated Factual Basis in support of the guilty plea (DE: 16), and the PSR and Addendum (DE: 20, 23, 23-1), but also to recognize the defendant's early willingness to accept responsibility for his actions

and resolve this matter through a pre-indictment guilty plea.[3]

**WHEREFORE**, the United States respectfully requests that this Court deny the defendant's request for variance and that it instead a impose a sentence of 12 months incarceration, followed by a three-year term of supervised release with a special condition that the defendant receive mental health treatment as directed by the Probation Office.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: s/*Edward N. Stamm*
Edward N. Stamm (FL Bar #373826)
Assistant United States Attorney
U.S. Attorney's Office - SDFL
99 Northeast Fourth Street, 8th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9164
E-mail: edward.stamm@usdoj.gov

By: *s/Maria K. Medetis*
Maria K. Medetis (FL Bar #1012329)
Assistant United States Attorney
U.S. Attorney's Office - SDFL
99 Northeast Fourth Street, 8th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9010
E-mail: maria.medetis@usdoj.gov

---

[3] Because the total offense was less than 16, the defendant was not entitled to the additional one-point reduction for early acceptance of responsibility.